UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ROBERT JOHNSTON, | |
| Plaintiff, | Civil No. 24-4394 (JRT/SGE) |
| v. | |
| CANADIAN PACIFIC KANSAS CITY LIMITED, *d/b/a* CPKC, | MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS |
| Defendant. | |

---

Nicholas D. Thompson, **CASEY JONES LAW FIRM**, 323 North Washington Avenue, Suite 200, Minneapolis, MN 55401, for Plaintiff.

Sara Welch, **STINSON LLP**, 1201 Walnut Street, Suite 2500, Kansas City, MO 64106; Sharon S. Beck, **STINSON LLP**, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, for Defendant.

Robert Johnston brings this action against his employer for alleged violations of the Federal Railroad Safety Act ("FRSA").  The named Defendant, Canadian Pacific Kansas City Limited ("CPKC"), argues that Johnston sued the wrong company and moves to dismiss for lack of personal jurisdiction and improper service of process.  Because the Court finds CPKC is a mere alter ego of Johnston's actual employer, the Court will deny the motion to dismiss because the Court has personal jurisdiction.  However, because Johnston failed to properly serve CPKC, the Court will allow Johnston to try again: within 90 days, he may either serve CPKC properly or amend his Complaint to name his actual employer.

## BACKGROUND

**I.    FACTS**

Plaintiff Robert Johnston was injured while working for a railroad on July 31, 2023. (Compl. ¶ 8, Dec. 5, 2024, Docket No. 1.)  His coworkers drove him to the hospital.  (*Id.* ¶ 9.)  While in the hospital, Johnston received a call from his supervisor, who cajoled him into telling the doctor not to prescribe him pain medication.  (*Id.* ¶ 10.)  Johnston alleges the supervisor did so because if Johnston had been prescribed pain medication, his employer would have needed to report his injury to the Federal Railroad Administration ("FRA").  (*Id.* ¶ 11.)  The supervisor also ordered Johnston to come straight back to work after leaving the hospital.  (*Id.* ¶ 12.)  Upon Johnston's arrival, the supervisor pressured him to come back to work the next day, even if it meant simply coming in and doing no work, rather than taking a day off as his doctor had recommended.  (*Id.* ¶¶ 13–14.)  Johnston alleges that missing work would also have triggered a duty to report the injury to the FRA.  (*Id.* ¶ 15.)  Fearful of retaliation, Johnston asked his doctor for a new note stating that he did not need pain medication or a day off after feeling pressure from his supervisor to do so.  (*Id.* ¶¶ 16–17.)  Johnston's employer then began targeting him for discipline, eventually leading to his resignation.  (*Id.* ¶¶ 18–19.)

The identity of Johnston's employer is in dispute.  In his Complaint, Johnston names CPKC as his employer.  (*Id.* ¶ 7.)  CPKC responds that it is merely a Canadian holding company created to facilitate the merging of Canadian Pacific and Kansas City Southern. (Decl. of Maria Barkovic ("Barkovic Decl.") ¶¶ 3–5, Jan. 21, 2025, Docket No. 15.)  CPKC

alleges it has no employees and never employed Johnston.  (*Id.* ¶ 13.)  Instead, CPKC claims Soo Line is Johnston's actual employer.  (*Id.*; Decl. of McKinsey Hanson ¶ 3, Jan. 21, 2025, Docket No. 16.)  Soo Line is a Minnesota company.  (Barkovic Decl. ¶ 9.)  As an indirect wholly owned subsidiary of CPKC, Soo Line is an independently operated company that conducts its own rail operations in the United States, and CPKC has not assumed its obligations or liabilities.  (*Id.* ¶¶ 8, 10–11.)

## II.     PROCEDURAL HISTORY

Johnston originally filed a complaint with the Occupational Health and Safety Administration ("OSHA") on August 22, 2023, naming the Canadian Pacific Railway as the respondent.  (Decl. of Michelle Haynes ("Haynes Decl.") ¶ 3, Ex. A, Jan. 21, 2025, Docket No. 17.)  CPKC alerted Johnston that he had named the incorrect legal entity in his OSHA complaint.  (*Id.* ¶ 4, Ex. B.)  OSHA dismissed Johnston's complaint after finding that his employer did not significantly interfere with his medical treatment or retaliate against him.  (*Id.* ¶ 5, Ex. C.)

Johnston then appealed the OSHA decision to an Administrative Law Judge.  (*See* Decl. of Sharon S. Beck ¶ 3, Ex. A ("Email Exchange"), Jan. 21, 2025, Docket No. 18; Def.'s Mem. Supp. Mot. Dismiss at 4, Jan. 21, 2025, Docket No. 14.)  However, while that action was pending, Johnston filed this action in federal court against CPKC for violations of the FRSA.  (*See generally* Compl.)  After the Complaint was filed, CPKC asked Johnston to amend the Complaint to name Soo Line as the defendant to "avoid unnecessary motion practice."  (*See* Email Exchange at 3.)  Johnston asked for an organizational chart that

demonstrated "the hierarchal relationships between CPKC's different subsidiaries," but CPKC responded only with a copy of Johnston's W-2 that listed Soo Line as the relevant employer. (*Id.*) Johnston declined to amend without an organizational chart. (*Id.* at 2.)

The parties also contest the facts surrounding the service of process. On December 30, 2024, a process server arrived at the CPKC Knoche Yard in Kansas City, Missouri, and delivered a copy of the Summons and Complaint to Diane Northup, an administrative assistant. (*See* Summons, Jan. 2, 2025, Docket No. 6.) Northup claims she was summoned via intercom to the foyer to meet someone looking for assistance, and that the process server simply handed her a manila envelope without informing her she was serving a summons or complaint. (Decl. of Diane Northup ¶¶ 4–8, Feb. 25, 2025, Docket No. 25.) Though the Summons claims Northup was authorized to receive service, CPKC states that Northup is an employee of Kansas City Southern Railroad, has never been employed by CPKC, and is not authorized to accept service of process on behalf of CPKC. (*Id.* ¶¶ 1–2.) In fact, CPKC has no registered agent for service of process in Missouri or Minnesota. (Barkovic Decl. ¶ 6.)

After Johnston refused to amend the Complaint to substitute Soo Line as the defendant in this case, CPKC moved to dismiss for lack of personal jurisdiction and insufficient service of process. (Mot. Dismiss, Jan. 21, 2025, Docket No. 12.)

**DISCUSSION**

**I.   STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(2) provides that a party may move to dismiss claims for lack of personal jurisdiction. "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). "As long as there is 'some evidence upon which a prima facie showing of jurisdiction may be found to exist,' the Rule 12(b)(2) motion will be denied." *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1014 (D. Minn. 2008) (quoting *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977)). The party seeking to establish personal jurisdiction bears the burden of proof. *Epps*, 327 F.3d at 647. When reviewing a Rule 12(b)(2) motion, the Court must view the evidence in the light most favorable to the nonmoving party. *Westley v. Mann*, 896 F. Supp. 2d 775, 786 (D. Minn. 2012).

Federal Rule of Civil Procedure 12(b)(5) allows a party to move to dismiss a complaint for insufficient service of process. The standard of review for a 12(b)(5) motion to dismiss is the same as that used for a 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Kammona v. Onteco Corp.*, 587 F. App'x 575, 577–78 (11th Cir. 2014), *cert. denied*, 575 U.S. 1010 (2015). To survive a motion to dismiss for insufficient service, "a plaintiff must plead sufficient facts to support a reasonable inference that the defendant" has been properly served. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (internal quotation marks omitted) (quoting *K-V Pharm. Co. v. J. Uriach &*

*CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011)). The plaintiff bears the burden of proof on the issue of service. *Id.* The parties may submit affidavits and evidence "to bolster their positions," but if they do, the "motion is in substance one for summary judgment." *Id.* "At the motion stage, the action should not be dismissed for lack of [proper service] if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support a conclusion that" service was proper. *Id.*

## II.   ANALYSIS

The Court begins with personal jurisdiction and then will address service of process.

### A.   Personal Jurisdiction

Personal jurisdiction in a diversity case exists to the extent permitted by the long-arm statute of the state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463–64 (1985). Minnesota's long-arm statute authorizes courts to exercise jurisdiction to the fullest extent allowed by the Due Process Clause. *See Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006) ("Minnesota's long-arm statute is coextensive with constitutional limits."). Due process requires that the defendant purposefully establish "minimum contacts," meaning that "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *Burger King Corp.*, 471 U.S. at 474 (citation omitted).

The Eighth Circuit has established a five-factor balancing test to determine whether sufficient minimum contacts exist for personal jurisdiction: "(1) the nature and

quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (citation omitted). The first three factors are primary, but all five must be considered together. *Id.* The third factor determines whether personal jurisdiction is specific or general. *Id.* Factors four and five assess whether the exercise of jurisdiction is reasonable. *Creative Calling Sols., Inc.*, 799 F.3d at 982.

Even if a party has minimum contacts with a forum, the Due Process Clause still forbids a court from exercising personal jurisdiction when doing so "would offend traditional notions of fair play and substantial justice." *Id.* at 981–82 (quotation omitted).

A particular line of caselaw has emerged to analyze whether courts may exercise personal jurisdiction over a parent company for the actions of its subsidiaries. In general, a court may base its personal jurisdiction analysis on the contacts of a parent company's subsidiaries "if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." *Epps*, 327 F.3d at 649.[1]

---

[1] Though the Eighth Circuit has acknowledged that "a lesser relationship" than being alter egos can be "a relevant factor" in determining personal jurisdiction, it has limited that ruling to situations in which a parent company "purposefully directed its products" to the forum state. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011). *Cf.*

Accordingly, the Court only has jurisdiction over CPKC if CPKC itself has had sufficient minimum contacts with Minnesota or if CPKC and Soo Line are alter egos.

As a holding company, CPKC does not have sufficient minimum contacts with Minnesota. It operates as a separate legal entity from Soo Line, does not operate any railroads in Minnesota, and was not Johnston's employer because it does not have any employees in Minnesota. Johnston pleads no facts that CPKC has any direct contacts with the state of Minnesota. Nor could he—CPKC is a mere legal fiction with wholly owned subsidiaries that carry out the brand's operations. Thus, the Court does not have personal jurisdiction through CPKC's contacts with Minnesota.

But parties do not seriously contest that the Court would have personal jurisdiction over Soo Line, and Johnston has pleaded enough facts, construed in Johnston's favor, to demonstrate that CPKC and Soo Line are alter egos. Soo Line is CPKC's wholly owned subsidiary. CPKC files annual reports that include subsidiaries like Soo Line. CPKC's own website features a timeline that includes the year in which CPKC "takes full control of the Soo Line" and brags that CPKC is the "first truly North American network to connect Canada, the U.S. and Mexico."[2] Soo Line and CPKC also share the same CEO: Keith Creel. (Decl. of Nicholas D. Thompson, Exs. 1, 4, Feb. 11, 2025, Docket No. 23.) It is clear to the

---

*Anderson v. Dassault Aviation*, 361 F.3d 449, 453 (8th Cir. 2004) (a products liability case). This is not a products liability case. It is an employment dispute.

[2] *See About CPKC*, CPKC, https://www.cpkcr.com/en/about-cpkc/history (last accessed May 27, 2025).

Court, at least at this stage of the litigation, that CPKC "so controlled and dominated the affairs of" Soo Line that the Court may properly exercise personal jurisdiction over CPKC as an alter ego of Soo Line. *Epps*, 327 F.3d at 649.

Accordingly, the Court will deny CPKC's motion to the extent it seeks to dismiss this case for lack of personal jurisdiction.

### B.    Service of Process

Still, CKPC argues that even if the Court has personal jurisdiction, the Court must dismiss for insufficient service of process.

Proper service is essential for a court to exercise jurisdiction over a party. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993). Questions concerning a court's jurisdiction must be resolved before considering any matter on the merits. *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001).

Federal Rule of Civil Procedure 4 governs proper service of process. Here, Johnston did not attempt service of process outside the United States. Therefore, service was only proper if he followed Federal Rule of Civil Procedure 4(h) for serving a foreign corporation in a judicial district of the United States. According to that rule, process must be served

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the

> statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1).

Rule 4(e)(1), in turn, allows the defendant to be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Minnesota is "where the district court is located," and Missouri is "where service is made," so Johnston can accomplish service under either law.

Missouri law allows service "upon a corporation by serving the process upon a managing officer or any person or corporation who shall be designated as a registered agent by such corporation in any of the several states." Mo. Stat. § 506.510.1. But Minnesota law allows service "by delivering a copy to an officer or managing agent, or to any other agent authorized **expressly or impliedly** or designated by statute to receive service of summons." Minn. R. Civ. P. 4.03(c) (emphasis added).

Though Minnesota's rule is broader, the Minnesota Supreme Court has already made clear that the Court should not read the more permissive language to open the door to allowing service on a person who only has apparent authority to accept service of process:

> Implied authority is actual authority, circumstantially proved, and is to be construed under common law principles of agency. . . . Apparent or ostensible authority is not actual authority; rather it is authority which the principal holds the agent out as possessing or knowingly permits the agent to

> assume. Actual authority is what is required under Rule 4.03(c).

*Tullis v. Federated Mut. Ins. Co.*, 570 N.W.2d 309, 313 (Minn. 1997).

CPKC itself has no registered agent for service of process in Missouri or Minnesota. Diane Northup indisputably did not have authority to accept service of process. And though parties dispute what representations Northup made to the process server upon arrival, Johnston has put forth no circumstantial evidence tending to prove that anyone with explicit authority to accept process implied to Northup that she had such authority.

Indeed, Johnston's briefing betrays his misunderstanding of the distinction between implied actual authority and apparent authority. Johnston alleges that the process server "informed an employee of who she was and that she needed to talk to the person in charge or the person who receives service." (Pl.'s Resp. Def.'s Mot. Dismiss at 19, Feb. 11, 2025, Docket No. 22.) When a woman came down to meet her, Johnston argues "CPKC implied that she was able to take service because she was ordered down to receive service on behalf of CPKC, and because she received the service without asserting that she was not able to." (*Id.* at 19–20.) Those are reasons why Northup may have had apparent authority—that is, CPKC allegedly implied **to Johnston** that Northup had such authority. But those are not reasons Northup had actual authority—that is, circumstantial evidence that CPKC implied **to Northup** that Northup had actual authority. Therefore, service of process has not been accomplished in this case. *Cf. West Licensing Corp. v. Eastlaw, LLC*, No. 00-2645, 2001 WL 501200, at *4 (D. Minn. May 9, 2001) (finding a

receptionist who verbally agreed to accept service of process on behalf of companies for whom she did not work "clearly did not have actual authority to receive service of process" under Minnesota law).

The question then becomes one of remedy. If service is not properly effected within 90 days, the Court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m); *see also Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996) (noting the Court "*may* extend the time for service rather than dismiss the case without prejudice" even absent a good cause showing). The Court will proceed as follows: within 90 days of the issuance of this Order, Johnston may either properly serve CPKC or amend his Complaint to name Soo Line as the defendant in this action. If neither occurs within 90 days, the Court will grant CPKC leave to file a renewed motion to dismiss for improper service of process.

## CONCLUSION

Johnston brought this action against CPKC for violations of the Federal Railroad Safety Act. CPKC, a parent company of Soo Line, moved to dismiss for lack of personal jurisdiction and improper service of process. Because CPKC and Soo Line are alter egos, the Court finds it has personal jurisdiction over CPKC. However, process has not been properly served. The Court will therefore give Johnston 90 days to remedy his error or else invite a renewed motion to dismiss for improper service of process.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1. The Defendant's Motion to Dismiss [Docket No. 12] is **DENIED** as follows:

    a. The Motion to Dismiss for lack of personal jurisdiction is **DENIED with prejudice**.

    b. The Motion to Dismiss for improper service of process is **DENIED without prejudice**.  Within 90 days of the issuance of this Order, Plaintiff may either:

        i. Properly serve Defendant, or

        ii. Amend the Complaint to name Soo Line as the defendant in this action.

2. If Plaintiff does not properly serve Defendant or amend the Complaint to name Soo Line as the defendant within 90 days of the issuance of this Order, the Court grants leave to Defendant to file a renewed motion to dismiss for improper service of process.

DATED: June 5, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge